## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

TERRENCE KIMBROUGH,
         Petitioner,

v.                                    Case No. 3:08cv552-LAC/MD

EDWIN BUSS,[1]
         Respondent.

_____

## REPORT AND RECOMMENDATION

Before the court is an amended petition for writ of habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 7). Respondent has filed a response (doc. 30) to which petitioner has replied (doc. 35). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

---

[1] Edwin Buss became Secretary of the Florida Department of Corrections on February 11, 2011, and is substituted as respondent.

## BACKGROUND AND PROCEDURAL HISTORY

On November 18, 2004, petitioner, Mr. Terrance Kimbrough, was charged by information in the Circuit Court of Escambia County, Florida, in three counts: (1) aggravated battery with great bodily harm, (2) sexual battery (deadly weapon or force likely to cause serious personal injury), and (3) false imprisonment.  The case was tried to a jury beginning on May 26, 2005 (doc. 30, ex. C, p.1).[2]  That same day the jury found him guilty as charged in all three counts  (ex. CV, p. 210).  On July 13, 2005, Mr. Kimbrough was sentenced on count 1 to 30 years imprisonment, to run concurrent with the sentence in count 2, on count 2 to life, and on count 3 to five years concurrent with count 2.  *State of Florida v. Terrence Kimbrough*, case no. 2004-4775.  Mr. Kimbrough was also found in violation of probation and sentenced to 165 months concurrent with count 2, with credit for time served (ex. B, pp. 72-80).

Mr. Kimbrough appealed.  The appellate court affirmed the convictions and sentences without a written decision.  *Kimbrough v. State*, 944 So.2d 353 (Fla. 1st DCA 2006) (table).  Mr. Kimbrough then filed a motion for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure (ex. I, pp. 4-59).  The Rule 3.850 court denied the motion summarily in a written decision (ex. I, pp. 100-119).  Mr. Kimbrough appealed the order denying his motion for post-conviction relief.  The First District Court of Appeals ("First DCA") affirmed without opinion the decision of the Rule 3.850 court.  *Kimbrough v. State*, 984 So.2d 1252 (Fla. Dist. Ct. App. 2008).  Respondent concedes that the instant petition is timely (doc. 30, p. 4).

## STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, § 2254 provides:

---

[2]  Hereafter all references to exhibits will be to doc. 30 unless otherwise noted.

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2006).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  Section 2254(d)(2) must be divided into two separate inquiries:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).   The federal habeas court "determining whether [it] should overturn the state courts' [sic] rejection of the claim at issue" should "review the highest state court decision disposing of the claim." *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1237 (11th Cir. 2011); *see Knowles v. Mirzayance*, __ U.S. __, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

---

[3]  Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Case 3:08-cv-00552-LC-MD   Document 40   Filed 05/20/11   Page 4 of 44

Page 4 of 44*

Following the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 1172, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when the Supreme Court's holding embodies the legal principle; dicta in opinions is not controlling. *Thaler v. Haynes*, __ U.S. __, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010). Furthermore, a federal court of appeals decision, "even a holding directly on point," cannot clearly establish federal law for § 2254 purposes. *Bowles*, 608 F.3d at 1316 (citing *Renico v. Lett*, __ U.S. __, 130 S. Ct. 1855, 1866 (2010)).

After identifying the governing legal principle, the court determines whether the state court adjudication is "contrary to" clearly established Supreme Court case law, either because the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or because it "confronts a set of facts that is materially indistinguishable from a decision of [the] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438, 161 L. Ed. 2d 334 (2005); *see* § 2254(d)(1). The state court does not need to cite to Supreme Court cases or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.

If the state court decision is not contrary to clearly established federal law, the federal habeas court must then determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. § 2254(d)(1); *Williams*, 529 U.S. at 412–13, 120 S. Ct. at 1523. The federal court defers

Case No. 3:08cv552/LAC/MD*segment>

to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record the court had before it.  *Williams*, 529 U.S. at 409, 120 S. Ct. 1521; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  A state court's application of federal law is objectively unreasonable when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Brown*, 544 U.S. at 141, 125 S. Ct. at 1439.  However, a state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause.  *Knowles*, 129 S. Ct. at 1419.  Notably, even a state court's incorrect application of law will not warrant federal habeas relief unless it is also objectively unreasonable.  *See Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 785-86, 178 L. Ed. 2d 624 (2011).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the Supreme Court applies the "objectively unreasonable" test to the state court's factual determination.  *Miller-El v. Cockrell*, 537 U.S. 322, 324, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).  The petitioner must show clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct.  *Gill v. Mecusker*, 633 F.3d 1272 F.3d 1272, 1287 (11th Cir. 2011); *see* § 2254(e)(1).

The Eleventh Circuit Court of Appeals squarely addressed the "unreasonable application of law" and the "unreasonable determination of facts" tests in *Gill* to clarify the federal habeas court's role in reviewing a state court's decision.  In that case, the petitioner twice moved the trial court in pretrial hearings to allow him to waive his Sixth Amendment right to counsel.  *Gill*, 633 F.3d at 1275-1284; *see* U.S. Const. amend. VI.  The trial court denied the first motion, finding that Gill's waiver of counsel was not knowing and intelligent.  *Id.* at 1278; *see Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541 (1975) (accused must "knowingly and intelligently" waive representation).  It also denied the second motion, instead allowing Gill to act as co-counsel for himself only for determining trial strategy.  *Gill*, 633 F.3d at 1284.  Gill was convicted, and the Florida Second District Court of Appeals ("Second DCA") affirmed without opinion the trial court's denial of post-conviction relief.  *Id.* at 1284-85.  Gill then filed a petition in Federal district court, which petition the court denied with prejudice.  *Id.* at 1284-85.  The Eleventh Circuit granted a limited Certificate of Appealability to determine the precise issue of the validity of "summary affirmance by a state appellate court of a trial court's decision based on potentially flawed reasoning."  *Id.* at 1286.[4]

The court acknowledged the well-settled principle that summary affirmances, such as the Second DCA's, are presumed adjudicated on the merits and warrant deference.  *Id.* at 1288 (citing *Harrington*, 131 S. Ct. at 784-85 and *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002)).  "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion.  *Id.* at 1291 (citing *Harrington*, 131 S. Ct. at

---

[4]  The court reviewed Gill's claims that the federal habeas court erred in two respects.  First, Gill argued the habeas court erred by "failing to review on the merits the 'legally and factually unsupported rationale' articulated by the state trial court.'" 633 F.3d at 1288.  Second, Gill argued that the habeas court's decision was *per se* erroneous because it "relied on a finding that the state court did not make." *Id..*  Gill averred the trial court denied relief by finding that Gill's waiver was not knowing and intelligent, while the federal district court denied relief by finding that Gill "never clearly and unequivocally" waived his right to counsel.  *Id.*

784).  Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion."  *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244-45 (5th Cir. 2002) (summarizing the emerging circuit split)).  The Eleventh Circuit court concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id* at 1291 (agreeing with the Fifth Circuit court in *Neal*, *supra*).  In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result."  *Id.*[5]

In light of *Gill*, the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it.  *Id.* at 1292.  A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable.  *Lockyer*, 538 U.S. at 64, 123 S. Ct. at 1168; *Gill*, 133 F.3d at 1290.

The Supreme Court recently summarized the meaning and function of habeas corpus in the federal system in one sentence:

> Under §2254, a habeas court must determine what arguments or theories supported or . . . could have supported [ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of this Court."

---

[5]  Applying this analysis, the court rejected Gill's claim that the district court erred by relying on different grounds than the trial court because Gill's basic premise—the Second DCA's summary affirmance relied on the trial court's statements from the bench—was not dispositive.  *Id.* at 1288.

*Harrington,* **131 S. Ct. at 786. Federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's conclusion."** *Id.* **at 786 (internal quotations omitted).**

**The federal habeas court will take the final step of conducting an independent review of the merits of the petitioner's claims only if it finds that the petitioner satisfied AEDPA and § 2254(d).** *See Panetti v. Quarterman,* **551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007);** *Jones v. Walker,* **496 F.3d 1216, 1228 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be."** *Harrington,* **131 S. Ct. at 786. When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1);** *see also Crawford v. Head,* **311 F.3d 1288, 1295 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court);** *Jackson,* **112 F.3d at 824-25 (noting that the new statute places a heavier burden on petitioner to overcome the presumption of factual correctness).**

## OTHER CONTROLLING LEGAL PRINCIPLES

<u>Ineffective assistance of counsel.</u>

**Some of petitioner's claims for relief in this court are grounded on his belief that he was denied his constitutional right to the effective assistance of counsel. To prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that: (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."** *Strickland v. Washington,* **466 U.S. 668, 677-678, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d**

674 (1984); *see also Berghuis v. Thompkins*, ___ U.S. ___, 130 S. Ct. 2250, 2264-65, 176 L. Ed. 2d 1098 (2010). When a petitioner claims his counsel was ineffective for failing to file a timely motion to suppress, the petitioner must prove to following:

> (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth [or Fifth] Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence.

*Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 2582-83 (1986)).

Reasonableness of representation does not mean what is possible, prudent, or even appropriate, but only what is "constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)). In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler*, 218 F.3d at 1314. Courts must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see also, e.g., Chandler*, 218 F.3d at 1314 (the *Strickland* standard compels courts to "avoid second-guessing counsel's performance"). The Eleventh Circuit has summarized the standard and the burden:

> Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioner's to bear, is and is supposed to be a heavy one. And, "[w]e are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial. . .worked adequately." *See White v. Singletary*, 972 F.2d 1218, 1221 (11th Cir. 1992). Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994); *see also, e.g., Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (the test is not whether counsel could have done more); *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992) (". . . the Constitution requires a good deal less than maximum performance.").

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S. Ct. at 2067; *Marquard v. Sec'y for Dep't of Corr.*, 429 F.3d 1278, 1305 (11th Cir. 2005). Petitioner must show a reasonable probability exists that the outcome would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Marquard*, 429 F.3d at 1305 (petitioner's burden under the prejudice prong is high). In applying *Strickland*, the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

The *Strickland* standard exists to prevent petitioners from abusing the post-trial process by escaping rules of waiver or presenting new issues; it should be "applied with scrupulous care" to protect the integrity of the adversary process. *Harrington*, 131 S. Ct. at 788. As it relates to habeas corpus applications, the Court emphasized:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788 (citations omitted); *Knowles*, 129 S. Ct. at 1420 (2009) (*Strickland* claims evaluated under § 2254(d)(1) require "doubly deferential" judicial review).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S. Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).  Habeas claims of ineffective assistance of counsel require "doubly deferential" judicial review under §2254(d) and *Strickland*, and petitioners only rarely prevail on this ground.  *See Rogers*, 13 F.3d at 386.

<u>Exhaustion and Default</u>

Respondent contends that petitioner did not present at least one of his current claims to the state court for review and is defaulted from doing so now, and that this court therefore should not consider the claims.  A petitioner defaults on an issue unless the petitioner first exhausted available state court remedies, giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438 (1971) (internal quotation omitted)); *see* 28 U.S.C. § 2254(b)(1)(A) (applicant must exhaust available state court remedies); § 2254(b)(3) (state is not estopped from relying on exhaustion requirement unless it expressly waives the right). *But see* § 2254(b)(2) (application may be denied on the merits even when applicant fails to exhaust state remedies).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, 513 U.S. at 365-66, 115 S. Ct. at 888; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732,

144 L. Ed. 2d 1 (1999) (same).  This affords the state court the first opportunity to adjudicate the claim on the merits in a formal proceeding to resolve any constitutional issues.  28 U.S.C. § 2254(b); *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. at 1732.

"Fair presentation" requires that, in each claim for relief, the petitioner include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  *Picard*, 404 U.S. at 278, 92 S. Ct. at 513. The Supreme Court has held that "the substance of a federal habeas corpus claim must first be presented to the state courts," thus rejecting the contention that the petitioner satisfies the exhaustion requirement by presenting the state courts only with the facts necessary to state any claim for relief.  *Id.*  Appeals to a broad, general constitutional guarantee also fail present the "substance" of such a claim to the state court.  *See Anderson v. Harless*, 459 U.S. 4, 7, 103 S. Ct. 276, 278, 74 L. Ed. 2d 3 (1982) (petitioner cited federal authority only by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law" (internal quotation marks omitted)).  The petitioner must explicitly state the federal claim from the outset, and if state and federal constitutional law overlap in their applicability to the petitioner's claim, he must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.  *Duncan*, 513 U.S. at 366, 115 S. Ct. at 888 (relying on similar state law standard for evidentiary ruling does not constitute exhaustion); *Picard*, 404 U.S. at 277-78, 92 S. Ct. at 513 (petitioner failed "fair presentation" requirement when he raised equal protection argument for first time to the Supreme Court); *see also Anderson*, 459 U.S. at 7 and n.3, 103 S. Ct. at 278 and n.3 (petitioner's citation to a state-court decision predicated solely on state law is probably insufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited state case advanced a federal claim).

More recently, the Supreme Court held that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition

or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material . . ..”  *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  However, the Court stated in dicta that simply labeling the claim “federal” is sufficient.  *Id.*

The Eleventh Circuit takes a more restrictive approach by requiring specific reference to the United States Constitution and favoring citations to federal cases. *Zeigler v. Crosby*, 345 F.3d 1300, 1307-08 and n.5 (11th Cir. 2003) (“Cursory and conclusional sentences (unaccompanied by citations to federal law) . . . did not present to the Florida courts the federal claim asserted to us.”).  This stricter standard requires the petitioner to differentiate a claim under the United States Constitution from one under a state constitution.  *Id.* at n.5;  *McNair v. Campbell*, 416 F.3d 1291, 1302-03 (11th Cir. 2005) (holding that “‘[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record’”) (citations omitted)).

A claim is procedurally defaulted and barred from federal review in two instances: (1) if it was raised in state court and rejected on the independent and adequate state ground of procedural bar or default; or (2) if it was not properly raised in state court and can no longer be litigated under state procedural rules.  *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2557 and n.1, 115 L. Ed. 2d 640 (1991); *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *see also Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (state court’s rejection of petitioner’s constitutional claim on state procedural grounds generally precludes subsequent federal habeas review of that claim).  In the first instance, a federal court must determine whether the state’s procedural default ruling rested on adequate state grounds independent of the federal question.  *Coleman*, 501 U.S. at 735 n.1, 111 S. Ct. at 2557 n.1; *Judd*, 250 F.3d at 1313.  Unless the state court “clearly and expressly” relies on independent and adequate state grounds, the federal court may

address the petition.[6]  *Coleman*, 501 U.S. at 735, 111 S. Ct. at 2557.  However, when any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine, the default is *per se* adequate state grounds independent of the federal question.  *Id.* at 735 n.1, 2557 n.1; *Harris v. Reed*, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 1043 n.9, 103 L. Ed. 2d 308 (1989) ("Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred").

The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  To foreclose federal review, the state procedural bar must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S. Ct. 850, 857, 112 L. Ed. 2d 935 (1991); *Judd*, 250 F.3d at 1313.  A state procedural bar is firmly established and regularly followed when the state has put litigants on notice of the rule, and the state has a legitimate interest in the rule's enforcement.  *Maples v. Allen*, 586 F.3d 879, 888 (11th Cir. 2009) (citing Lee v. Kemna, 534 U.S. 362, 385-88, 122 S. Ct. 877, 890-92, 151 L. Ed. 2d 820 (2002)).

To overcome a procedural default so that the federal habeas court may reach the merits of a claim, the petitioner must show either "cause for the default and actual prejudice resulting therefrom," or a fundamental miscarriage of justice. *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1345 (11th Cir. 2004).  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991).  To meet the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the

---

[6]  The "adequate and independent state grounds" rule applies equally to procedural and substantive state-law grounds.  *Lee v. Kemna*, 534 U.S. 362, 375, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).

conviction of one who is actually innocent" because "it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995).  Further:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*  In short, actual innocence claims opening the gate for the miscarriage of justice exception are summarily rejected in virtually every case.  *Id.*

### PETITIONER'S GROUNDS FOR RELIEF

1. <u>Trial court error in denying motion to suppress</u>

Mr. Kimbrough's counsel filed a motion to suppress that was heard during trial.  The matter sought to be suppressed was the recording of Mr. Kimbrough's confession.  At the hearing Mr. Kimbrough testified that when he was first arrested one of the officers informed him that he was "going to get 99 years" because he was on probation (ex. C, p. 74).  That officer then "ran over" to another officer who confirmed that Mr. Kimbrough would get 99 years based on a battery he had committed in Orlando.  Mr. Kimbrough told them that the Orlando case had been dismissed but they said he would get 99 years anyway (*id.*).  In Mr. Kimbrough's mind, the next thing would be a death penalty, so he decided to confess so he would get a lesser sentence (*id.* at 76-77).  On cross examination he admitted that, when interviewed by law enforcement a second time at his own request, he did not say anything about the supposed 99 year threat (*id.* at 77).  The trial court denied the motion to suppress as insufficient as a matter of law, and further held that pursuant to Florida law the jury would weigh the voluntariness issue (*id.* at 81-82).

Respondent contends that Mr. Kimbrough did not present this claim as a federal matter (doc. 30, p.6).  That is, he relied on Florida law only in presenting his

position.  Respondent is correct.  On direct appeal Mr. Kimbrough argued that the trial court erred in not suppressing his confession (doc. 30, ex. D, pp. 25-28).  He cited Florida law in support of his position (*id.*).  He mentioned one federal decision[7] in support of his assertion that the state has the burden of showing that a confession is voluntary.  In his reply brief on appeal, he also cited *Jackson v. Denno*, 378 U.S. 368, 391, 84 S. Ct. 1774, 1778, 12 L. Ed. 2d 908 (1964) for the proposition that a defendant is entitled to a "clear-cut" determination as to voluntariness outside the presence of the jury (doc. 30, ex. F, pp. 2-3).  Although *Jackson* briefly mentions due process rights, Mr. Kimbrough's reply does not cite any federal constitutional rights, and Mr. Kimbrough follows the *Jackson* citation with two Florida Supreme Court citations to support the state-based argument (*id.* at 3).  Mr. Kimbrough did not fairly present this claim as a federal constitutional violation.  Now, any further attempt at exhaustion in Florida courts would be futile because his claim would be untimely and procedurally barred under Florida law.  *See Green v. Florida*, 975 So.2d 1090, 1105 (Fla. 2008) (holding that issues were procedurally barred because they should have been, but were not, raised on direct appeal); *Smith v. State*, 445 So.2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.").  He has made no showing of actual innocence.  Mr. Kimbrough is not entitled to federal habeas relief, and the writ should not issue.

---

[7] *Lego v. Twomey*, 404 U.S. 477, 479, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972).  The Court in *Lego* upheld Illinois procedural rules that require voluntariness to be proved by a preponderance of the evidence and not beyond a reasonable doubt.  404 U.S. at 489, 92 S. Ct. at 626-27.  It stated:

> To reiterate what we said in Jackson: when a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered. Thus, the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary.  Of course, the States are free, pursuant to their own law, to adopt a higher standard.

*Id.*  Florida follows the preponderance of the evidence standard.  *Thompson v. Florida*, 548 So.2d 198, 204 (Fla. 1989).

2.   **Trial court error in _Nelson_ hearing**

Mr. Kimbrough next contends that the trial court erred by denying him a _Nelson_[8] hearing.  That is, he contends that the trial court should have allowed him to discharge his court-appointed counsel but failed to hold the necessary hearing to determine whether counsel was incompetent as Mr. Kimbrough claimed (ex. D, pp. 29-35).  Before jury selection, Mr. Kimbrough told the trial judge that his counsel was not competent:  she had not filed a motion to suppress, she had not investigated the case by finding a copy of the recording of one of his interviews with law enforcement, she admitted the case was too complicated for her and recommended that he hire private counsel (ex. B, p. 122).  Counsel responded that she had filed a motion to suppress (which she had), she sent her investigator to look for the tape, she had not told Mr. Kimbrough that the case was too complicated for her, and he was welcome to hire a lawyer if he wanted to (_id_. at 122-23).  The court held that there was no basis for further inquiry and the matter was left on the trial calendar (_id_. at 123-24).

Contrary to Mr. Kimbrough's contention, whether he was entitled to a hearing (which was in fact held as outlined above, even if the magic words "this is a _Nelson_ hearing" were not uttered) is solely a matter of state law.  _Ortiz v. McNeil_, __ So.2d __, 2010 WL 4983599 at *5 ("No case has been cited for the proposition that the federal constitution mandates the _Nelson_ procedure, and this court has found none.").  Therefore, the merits of his claim will not be addressed here.  Federal habeas relief is available to correct only federal constitutional injury.  28 U.S.C. § 2254(a); _Estelle v. McGuire_, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80, 116 L. Ed. 2d 385 (1991) (errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief); _Wainwright v. Goode_, 464 U.S. 78, 83-84, 104 S. Ct. 378, 382, L. Ed. 2d 187 (1983); _Barclay v. Florida_, 463 U.S. 939, 958-

---

[8]   _Nelson v. State_, 274 So.2d 256 (Fla. 4th DCA 1973).  For an explanation of the _Nelson_ hearing requirements, see _supra_ note 11.

659, 103 S. Ct. 3418, 3429, 77 L. Ed. 2d 1134 (1983) ("**Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.**" (citations omitted)). Questions of state law and procedure "rarely raise issues of federal constitutional significance.  [A] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Tejada v. Dugger,* 941 F.2d 1551, 1560 (11th Cir. 1991) (internal quotations omitted) (quoting *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983)).

State law issues may be reviewed in this federal forum only when the alleged errors were "so critical or important to the outcome of the trial to render the entire trial fundamentally unfair."   *Tejada*, 941 F.2d at 1560. The Supreme Court "ha[s] defined the category of infractions that violate 'fundamental fairness' very narrowly." *Estelle*, 502 U.S. at 352, 110 S. Ct. at 668.  The instant case is not one in which there were such critical errors, if indeed there were any errors, that a constitutional violation is apparent.

The issue Mr. Kimbrough raises here—whether he was entitled to a *Nelson* hearing—is not a federal Constitutional matter.  The United States Supreme Court has never defined what procedure should be used when a defendant alleges that his attorney is not competent to represent him.  The Eleventh Circuit addressed the issue in *United States v. Garey*, 540 F.3d 1253, 1262 (11th Cir. 2008):

> Although the Sixth Amendment guarantees counsel, it does not grant defendants the unqualified right to counsel of their choice.  An indigent criminal defendant "does not have a right to have a particular lawyer represent him, nor to demand a different appointed lawyer except for good cause." *Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985). Good cause in this context means a fundamental problem, "such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973).  In practical terms, then, defendants who lack the means to hire a private attorney must either accept the counsel appointed to represent them or represent themselves.

Although the *Garey* case dealt with a federal defendant, the court noted that the Supreme Court had not established a procedure for dealing with a defendant who wants another lawyer. *Id.* at 1264, 1267 n.7.

This claim also fails because Mr. Kimbrough did not present it to the state courts as a federal claim. In his initial brief on direct appeal, Mr. Kimbrough cited nine cases, all of which were Florida Supreme Court or appeals court decisions (ex. D, pp. 29-35). He argued he was denied a *Nelson* hearing, and the trial court had failed to follow the procedure set out in Florida precedent (*id.*). He did not cite federal case law or make mention of the Sixth Amendment (or any other Constitutional guarantee). In sum, Mr. Kimbrough did not alert the state court of a federal claim so that it could recognize the claim without reading beyond his brief. *See Baldwin*, 541 U.S. at 32, 124 S. Ct. at 1351.

The State asserted all procedural bars in its response (doc. 30, p. 3), and it is too late for Mr. Kimbrough to return to the state court to present a federal claim. Mr. Kimbrough has not raised the defense of actual innocence. Mr. Kimbrough is not entitled to federal habeas relief, and the writ should not issue.

### 3. Ineffective assistance of counsel - failure to challenge illegal search

Mr. Kimbrough next contends that his counsel was ineffective in failing to challenge an allegedly illegal search (doc. 7, p. 14-16). He presented this issue to the state court in a motion for post-conviction relief pursuant to Rule 3.850, Fla. R. Crim. P. (ex. I, pp. 18-30). Mr. Kimbrough claims his counsel refused to file a motion to dismiss the information or suppress evidence obtained from investigating officers' visit to his residence without a search warrant (*id.* at p. 18).

In his 3.850 motion, Mr. Kimbrough summarizes the officers' visits to the residence, once with the victim and again a few days later without her (*id.*). The first visit consisted of driving by slowly to observe the main house and another wooden house on the property, which the victim identified as the site of the sexual battery (*id.*). The officers returned and spoke with a young girl, who allowed them into the residence while she looked for an adult (*id.* at 21). The investigators also walked to

the wooden house, where the girl opened the door for them (*id.* at 21).  They spoke briefly with a man who identified Mr. Kimbrough as a resident (*id.*)  At this point, one of the investigators noticed that the inside doorknob handle was missing, which was consistent with the victim's description of the house (*id.* at 19, 21).

Mr. Kimbrough argues that the investigation was an illegal search and the State introduced evidence obtained from the search at trial (doc. 7, pp. 15-16; doc. 30, ex. I, p. 24).  First, the State introduced evidence of the missing doorknob to corroborate the victim's testimony about the location of the battery (ex. I, p. 23-24).  Second, Mr. Kimbrough contends the State only learned his name because the resident identified him when they were on the property without the owner's consent (*id.* at 23).  He states that his counsel's conduct "involved misrepresentation, deceit and dishonesty" because she told him there was no reason to investigate the possibility of an illegal search (*id.*).  He concludes she was ineffective for failing to move to suppress the "search," and if she had moved to suppress, there is a reasonable probability that he would not have been found guilty (doc. 7).

### State Court Decision

The Rule 3.850 court denied relief on Mr. Kimbrough's claim that his counsel was ineffective for failing to move to dismiss the information or suppress evidence (ex. I, pp. 104-105).  The court found that he could not show he was prejudiced by counsel's failure to move to suppress either evidence of his identity or the missing doorknob (*id.*).  First, the court refuted Mr. Kimbrough's claim that the officers would not have learned his name, but for the illegal search, by citing to record testimony that the victim confidently identified him from a photographic lineup on October 14, 2004 (*id.* at 104).  It concluded that because the victim identified Mr. Kimbrough, he cannot show he was prejudiced by an illegal search or, by extension, his counsel's failure to move to dismiss the information (*id.*).  The court also found unpersuasive Mr. Kimbrough's claim regarding the missing doorknob.  It court found that the officers went to Mr. Kimbrough's residence during the normal course of their investigation, and they would have discovered the missing doorknob as a matter of

routine police procedure stemming from their investigation (*id.* at 105).  Because he failed to argue that the evidence would not have been admissible under the inevitable discovery rule, Mr. Kimbrough failed to demonstrate prejudice (*id.*).

Federal Review of State Court Decision

The Rule 3.850 court identified the elements necessary to prevail on a claim of ineffective assistance of counsel as set forth in *Strickland v. Washingon*, *supra* (ex. I, pp. 101-103).  It applied the prejudice prong of the *Strickland* test in finding that Mr. Kimbrough did not show he was prejudiced by counsel's failure to move to dismiss the information, or suppress evidence of his identity or the missing doorknob (*id.* at 104-105).  In construing *Strickland*, the court correctly reasoned that if he could not show he was substantially prejudiced by his counsel's decision, he could not prevail on the claim.  *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068 ("but for counsel's unprofessional errors, the result of the proceeding would have been different").

The Rule 3.850 court supported its decision with record testimony.  Mr. Kimbrough briefly mentions that investigators conducted a photographic lineup with the victim (ex. I, p. 23).  The court cites to the victim's testimony that was not a suspect at the time of the first lineup, and the victim tentatively identified his relative as the perpetrator (ex. C, pp. 57-59).  The next day investigators conducted another photographic lineup, this time including Mr. Kimbrough's photograph, and the victim positively identified him as the perpetrator (*id.* at 59-60).  Based on the record evidence, the victim's identification led to Mr. Kimbrough's apprehension (*id.*).  Even if the officers' conversation with another resident who identified him was an "illegal search," they learned his identity during the course of their investigation independently from that interaction.  Based on this evidence, the court reasonably concluded that Mr. Kimbrough was not prejudiced by his counsel's failure to move to dismiss the information on this ground for relief (ex. I, p. 104 and att. 2).

The Rule 3.850 court application of the inevitable discovery exception to the exclusionary rule is also reasonable based on the record facts (*see* ex. I, p. 105).

Under this exception, evidence obtained from an illegal search may be admissible if:

> The government can establish by a preponderance of the evidence that the information would have ultimately been recovered by lawful means . . . [and] "the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct."

*United States v. Virden*, 488 F.3d 1317, 1323 (11th Cir. 2007) (citing in part *Jefferson v. Fountain*, 382 F.3d 1286, 1295 (11th Cir. 2004)).  In the instant petition, the Rule 3.850 court cited the trial record, in which one investigating officer testified that the victim led the officers to the residence and identified it as the place the sexual battery occurred (ex. I, p. 105; *see* ex. I, att. 3).  However, the officers did not return to the residence and discover the missing doorknob until a later date (*id.* at 104-105).  Under these facts, the court reasonably concluded that the missing doorknob would have been discovered during the continuing course of the investigation; thus, the missing doorknob was admissible at trial.  The court's decision that Mr. Kimbrough did not demonstrate prejudice by his counsel's failure to move to suppress the doorknob is reasonable because a motion to suppress would have been futile under the inevitable discovery exception to the exclusionary rule.  *See Zakrzewski,* 455 F.3d at 1260 (counsel is not ineffective for failing to file a futile motion to suppress).

The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," and it was not based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Kimbrough is not entitled to federal habeas relief, and the writ should not issue.

4. Ineffective Assistance of Counsel:  Failure to File Demand for Speedy Trial

Mr. Kimbrough contends he specifically asked his attorney to file a motion for demand for speedy trial on November, 3, 2004, but his attorney never filed the motion (doc. 7, pp. 17-20; doc. 30, ex. I, pp. 24-25).  As a result of counsel's failure to file the motion, the State had extra time to prepare its case and locate a primary

witness, which Mr. Kimbrough believes prejudiced him (doc. 7, p. 19; doc. 30, ex. I, p. 25).  He states in his 3.850 motion that he "was held well after 175 day Speedy Trial Period [May 26, 2005]" (ex. I, p. 25).  Mr. Kimbrough asserts he would have been discharged if his attorney had filed the motion when requested,(ex. I., p. 25).

Respondent states that Mr. Kimbrough's Rule 3.850 motion sufficiently presented a claim for ineffective assistance of counsel for failing to file a demand for speedy trial, but it does not fairly present a <u>federal constitutional speedy trial claim</u> (doc. 30, p. 23).

<u>State Court Decision</u>

This claim was ground three of Mr. Kimbrough's motion for post-conviction relief (ex. I, p. 24).  The Rule 3.850 court construed the claim as one alleging ineffective assistance of counsel and addressed that claim on the merits (ex. I, p. 105).  It did not acknowledge a federal speedy trial claim but instead applied Florida procedural law to analyze whether counsel's inaction prejudiced petitioner under *Strickland* (*id.* at 106).  Florida law states that every person charged with a felony shall be brought to trial within 175 days of arrest, and "every person charged with a crime by indictment or information shall have the right to demand a trial within 60 days . . .." Fla. R. Crim. P. 3.191(a), (b).  The court quoted Rule 3.191(l), Florida Rules of Criminal Procedure, which states in relevant part:  "the court may order an extension of time periods provided under this rule when exceptional circumstances are shown to exist."  (Doc. 30, ex. I, p. 106).  It agreed with Mr. Kimbrough that the State had difficulty procuring a witness, but it categorized this fact as an exceptional circumstance, specifically, the "unforeseeable and unavoidable absence of a person whose presence or testimony is uniquely necessary for a full and adequate trial." (*Id.*; *see* Fla. R. Crim. P. 3.191(l)(1).  Based on this reasoning, the court concluded Mr. Kimbrough failed to show a reasonable probability that the outcome of the trial would have been different, as required by *Strickland* to prevail on his claim; even if counsel had made a speedy trial demand, the State likely would have moved for an extension of time, and the court would have granted it (ex. I, p. 106).

**Federal Review of State Court Decision**

The Rule 3.850 court identified Mr. Kimbrough's claim as a federal claim for ineffective assistance of counsel and assessed its merits according to the controlling Supreme Court precedent of *Strickland*, *supra* (ex. I, p. 106).  It reasoned Mr. Kimbrough could not show he was prejudiced so as to meet the deferential *Strickland* standard because, even if counsel made a speedy trial demand, he could not show that the court would have refused to grant the State an extension of time under Florida procedural law (*id.*).  The Supreme Court has repeatedly held that a federal habeas court is bound by a state court's interpretation of state law.  *E.g., Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 604, (2005) (Ohio transferred intent doctrine); *Estelle*, 502 U.S. at 67-68, 112 S. Ct. at 480, 116 L. Ed. 2d 385 (1991) (California rules of evidence); *accord Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) (Florida rules of evidence).  Therefore, this court defers to the state court's interpretation of Rule 3.191, Florida Rules of Criminal Procedure.

Under the AEDPA, this court presumes the Rule 3.850 court's factual determinations are correct unless petitioner rebuts the determinations by clear and convincing evidence.  29 U.S.C. § 2254(e)(1).  Here, the court determined that counsel was not ineffective for failing to file a speedy trial demand because, under the circumstances, the trial court would have given the state an extension of time (ex. I, pp. 105-106).  The record supports the Rule 3.850's court's conclusion that the victim was unavailable.  It shows the victim was subpoenaed on December 21, 2004, to appear for deposition (ex. I, att. 4).  However, the deposition was not filed with the trial court until May 10, 2005, which is consistent with the Rule 3.850 court's note that the victim was not actually deposed until April 26, 2005 (ex. A; *see* ex. I, p. 108 n.6).  Mr. Kimbrough's motion also included as an exhibit a letter from his counsel on February 23, 2005, stating that the prosecution was having trouble locating the victim (ex. I, p. 65).  In fact, the court also granted petitioner's counsel's request for a continuance because she was not prepared for trial without the victim's deposition (*id.* at 61; ex. A, line 39).  Mr. Kimbrough has not presented evidence to rebut the

Rule 3.850 court's determination that a speedy trial demand would have been unsuccessful, and Ms. Harris cannot be faulted for failing to raise or preserve a meritless issue.  *Freeman v. Attorney General, Florida,* 536 F.3d 1225, 1233 (11ᵗʰ Cir. 2008).

The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," and it was not based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra.*  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

Mr. Kimbrough's 3.850 petition did not fairly present a claim for violation of his Sixth Amendment right to a speedy trial.  Mr. Kimbrough cites exclusively to Florida cases in this claim.  Federal law only appears in the last phrase following the procedural history of a Florida case:  "See Burk v. State, 855 So.2d 207 [Fla. App. 1 Dist. 2003] affirmed in part, reversed in part, remanded with directions, *Fla. Constitutional and United States Constitution Right to Speedy Trial and effective assistance of counsel 6 Amendment and 14ᵗʰ Amend.*"  (ex. I, p. 25 (emphasis added)).  This statement cannot fairly alert the Rule 3.850 court to the federal nature of the claim.  *See Duncan,* 513 U.S. at 365-66, 115 S. Ct. at 888.  The Rule 3.850 court is not required to read past the face of the pleading to find a federal claim.  *Baldwin,* 541 U.S. at 32, 124 S. Ct. at 1351.  On the face of ground three of his post-conviction motion (ground four here), he is complaining that his counsel was ineffective for failing to file a demand for speedy trial under Florida law.

On the other hand, even if Mr. Kimbrough's claim did fairly present a federal speedy trial claim, a review of the merits of the claim clearly show his Sixth Amendment right to a speedy trial was not violated.[9]  Mr. Kimbrough was arrested

---

[9]  The Rule 3.850 court notes that petitioner's grounds three through five in his motion for post-conviction relief are related (doc. 30, ex. I, pp. 107-108).  Ground four stated:  "Counsel request for a continuance affected Defendant's legal rights depriving Defendant of his Fla. constitutional *and United States constitutional* right for a fast and speedy trial."  (Doc. 30, ex. I, pp. 26-27) (emphasis added).  Although the undersigned strongly doubts these words—asserted within a separate

on October 15, 2004, and the jury was sworn on May 26, 2005 (ex. A).  He waited seven months and eleven days, or 223 days, before going to trial.  Under United States Supreme Court precedent, the length of the delay must be "presumptively prejudicial" to trigger an inquiry into a speedy trial violation.  *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192, 33 L. Ed. 2d 101 (1972).  The Eleventh Circuit has held that a delay is presumptively prejudicial "as it approaches one year."  *United States v. Schlei*, 122 F.3d 944, 987 (11th Cir. 1997).  223 days is not presumptively prejudicial so as to trigger an inquiry into the delay.  To the extent Mr. Kimbrough claims his Sixth Amendment right to a speedy trial was violated, the claim is without merit.  Mr. Kimbrough is not entitled to federal habeas relief, and the writ should not issue.

### 5.   Ineffective Assistance of Counsel for Failing to Investigate Exculpatory Evidence

Mr. Kimbrough's fifth claim for relief is a combination of grounds six through eight in his 3.850 motion for post-conviction relief, all of which allege ineffective assistance of trial counsel (doc. 7, p. 21).  He makes multiple claims:

1.    Counsel failed to investigate the whereabouts or contents of a videotaped interview.  (Ex. I, p. 32).

2.    Counsel did not file a motion for dismissal after learning a videotaped interview was missing.  (*Id.* at 34).

3.    Counsel misled petitioner by telling him that without the videotape "there would be no evidence to support psychological coercion of the [officers'] deliberately elicited statements (incriminating)."  (*Id.* at 31).

4.    Counsel refused to bring the issue of the missing videotape, its contents, or editing to the court's attention. (*Id.* at 35).

5.    Counsel did not view the videotapes prior to filing a motion to suppress.  (*Id.* at 33).

6.    Counsel did not specify what were the officers' coercive statements or actions in the motion to suppress or subsequent hearing.  (*Id.* at 36-37).

---

ground for relief that was labeled as an ineffective assistance of counsel claim—fairly presented a claim for violation of petitioner's federal constitutional right, the Supreme Court has stated in dicta that simply labeling a claim "federal" is sufficient for fair presentation.  *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  Given the Rule 3.850 court's notation about relatedness, this undersigned finds it appropriate to address the issue.

7.    Counsel did not inform the defendant that portions of the videotape were inaudible; specifically, portions of the videotape that would have shown Mr. Kimbrough's confession was involuntary.  (*Id.* at 36).

8.    Counsel failed to investigate government misconduct relating to the handling and editing of the videotape.  (*Id.* at 34, 37).

(*See also* doc. 7, pp. 21-23).

Officers conducted two videotaped interviews of Mr. Kimbrough during which he confessed to sexually battering the victim (*id.*, p. 22).  Mr. Kimbrough sent his counsel a letter on April 20, 2005, asking her to file a motion to suppress his confession (doc. 7, p. 22; doc. 30, ex. I, p. 31).[10]  On May 11, 2005, counsel visited him and told him a videotape was missing (doc. 30, ex. I, p. 31).  Mr. Kimbrough concedes counsel attempted to locate the missing tape, and in fact it was located and produced at trial (doc. 7, p.21; doc. 30, ex. I, p. 36).

At trial, the State admitted that it had edited the videotape, and Mr. Kimbrough states the redacted portions showed the two officers threatening him in order to elicit a confession (ex. I, p. 36).  Had the jury heard these portions of the tape, Mr. Kimbrough asserts it would have concluded his confession was involuntary (*id.*).  Alternatively, he alleges:

> [The] videotapes were tampered with to gain conviction.  The videotapes were the only concrete evidence in this case which could be used to convict the Petitioner.  The rest of the State's evidence was hearsay and would not have proved a *prime* [sic] *facie* case against the petitioner."

(Doc. 7, pp. 21-22).  In sum, Mr. Kimbrough alleges that counsel's failure to investigate the videotapes, including their whereabouts and content, or file the appropriate motions prejudiced him because an investigation would have led to dismissal (doc. 7, p. 23).  Alternatively, if the court did not dismiss the case, the

---

[10]  Petitioner also complains that counsel did not tell him she filed the motion to suppress his confession until the suppression hearing (doc. 7, p. 21).

court would have viewed the unedited tapes and suppressed the confession, or the jury would have viewed the unedited tapes and acquitted him (doc. 7, p. 23).

>   State Court Decision

>   The Rule 3.850 court addressed grounds six and seven together, which included Mr. Kimbrough's claims of ineffective assistance of counsel regarding the missing videotape.  The trial court held two *Nelson*[11] inquiries on May 18 and May 23, 2005, and concluded Mr. Kimbrough's grounds were baseless (ex. B, p. 121-129).  The Rule 3.850 court concurred with the trial court's decision and attached the relevant portion of the record (ex. I, p. 109 and att. 7).  The trial court held the first *Nelson* inquiry ancillary to jury selection (ex. B., p. 121).  Ms. Harris, Mr. Kimbrough's counsel, informed the court that he wanted to speak before selection began, and the court allowed it.  (*Id.*, pp. 121; ex. C, attach. 7).

>   THE DEFENDANT: It won't take too long, your honor.

>   I want to hold a Nelson inquiry.  My constitutional rights to a speedy trial without demand was violated.  Ms. Alice Harris has failed to properly prepare for trial.  On May 11, 2005, my lawyer, Ms. Alice Harris visited me and informed me, according to the State prosecution, one of two tapes that are made into evidence is missing.  I am deeply concerned about this.  Please, Your Honor, I'm asking you to inquire about those matters.

>   After I pointed out some facts in my case which causes some grounds for a suppression hearing, Ms. Alice Harris stated she had not fully investigated my case, probably due to the fact that the State was missing one of the two tapes submitted in evidence.

---

[11] *Nelson v. State*, 274 So.2d 256 (Fla. 4th Dist. Ct. App. 1973).  *Nelson* held that in order to protect an indigent.  defendant's right to the effective assistance of appointed counsel, where it appears that the defendant wishes to discharge his attorney, the trial court should make an inquiry as to the reason for the request to discharge.  274 So.2d at 258.  If incompetency of counsel is the reason, the court must inquire further to see if counsel is rendering effective assistance.  *Id.* at 259.  The ultimate purpose of the inquiry is to determine whether there is sufficient justification to discharge the first attorney and appoint a second.  *Id.*

Ms. Alice Harris has not investigated the grounds to suppress my statements nor filed a motion for a suppression hearing.  And by Ms. Alice Harris' admission that this case is too complicated for her, I want to hold a Nelson inquiry, based upon the performance of my lawyer. And again, by her own admission, this case is too complicated for her.

THE COURT:  What do you want to say in response, Ms. Harris?

MS. HARRIS: Your Honor, I have asked my investigator to see if he can locate the supposedly missing videotapes.  They indicated they didn't have it.  I believe it may be in the evidence room.  I never told Mr. Kimbrough this was a case that was too complicated for me.  He indicated he might hire a private attorney.  I told him he'd be welcome to do that, that this was a serious matter.  If he wanted to hire a private attorney, I would understand that on his part.

I did file a motion to suppress the defendant's confession.  I filed it yesterday.  Presuming it could be - - the trial may go forward, we can hear it before the trial begins, if it starts now.  I did ask for a continuance in this case one time because I had not taken the deposition of the - -

THE COURT: All right.  It's set for trial?

MS. HARRIS: It is set for trial.

THE COURT: You've complete discovery?

MS. HARRIS: I believe I have completed all discovery.  I feel ready.

THE COURT: I'm going to find, then, that there's no basis for any further inquiry.  We'll leave this set for trial and jury selection on Monday.

THE DEFENDANT: May I say something else?

THE COURT: What is it?

THE DEFENDANT: One of the tapes - - I need one of the tapes because it would prove some facts in my case.

THE COURT:  Do you want a continuance?

**THE DEFENDANT:  As far as a suppression hearing?**

**THE COURT:  You've got to make up your mind.  You say you want a speedy trial.**

**THE DEFENDANT: My speedy trial was without demand. Them days passed already.**

**THE COURT: So what are you asking me?**

**THE DEFENDANT: I'm asking for a suppression hearing.  Has it been granted?**

**THE COURT: No, it hasn't been granted yet.  It hasn't been heard yet.**

**. . .**

**THE COURT: We'll pick a jury and hold a suppression hearing along with the trial.**

**. . .**

**THE COURT:  Right.  Okay.  Call the next case.**

**THE DEFENDANT: No Nelson inquiry?  I'm stuck with you?**

**THE COURT: You're stuck with her, that's right.**

**(Proceedings concluded)**

(Ex. B, pp. 121-124; ex. I, attach. 7).

The trial court reset jury selection for May 23, 2005.  Before jury selection began, Mr. Kimbrough asked, "Do I get to say anything?"  The court did not explicitly allow his statement, but it did not stop him from speaking.

**THE DEFENDANT:  Okay.  I just want to say some things just to get it documented.  I don't want to take up too much of my time.**

**Are you going to come see me today?**

**THE COURT: Let's go, Mr. Kimbrough.  I've got a lot of cases today.**

THE DEFENDANT: As of today I've been incarcerated exactly 221 days. I was placed in front of Judge Geeker for the first time on the 216th day of these 221 days. This alone proves my violation of the speedy trial. And according to the law my case shall be discharged. Due to counsel's insufficience based on not filing a motion to discharge my case knowing that my speedy trial demand was violated.

Third ground, again, by Ms. Alice Harris, as I mentioned, this case is too complicated for her.

Fourth grounds, my attorney advised me that deposition was taken January 7, 2005, on 3 police officers. I requested to view these depositions on 3/30/05. I received the depositions 5/19/05. However, the deposition on Deputy Tama Barber wasn't included. She was in fact the Deputy that assisted in the entirety of my case, and she also assisted in conducting the first interview I had with the Escambia County Sheriff's department.

My attorney failed to subpoena Deputy Barber so I can't inspect or view the deposition. Deputy Tama Barber is listed as a category A statement witness in my discovery, and I am entitled by law to cross-examine her in trial according to my deposition.

And Ms. Alice Harris stated in a letter dated April 13, '05 that she would come visit me, and go over evidence in the case and discuss trial strategy and she hasn't. And since then I feel I am being compelled to defend myself based on the grounds of insufficient counsel.

THE COURT: All right. Those motions will be denied. We previously took up the matter that you raised by a Nelson hearing - - request for Nelson hearing. The Court conducted a brief hearing, found that those grounds were baseless. So all other motions are denied.

(Ex. B, pp. 127-129; ex. I, attach. 7).

Based on the record testimony, the Rule 3.850 court stated it "will not again address these claims."  (Ex. I, p. 109).

The Rule 3.850 court considered the remaining claims in ground seven of Mr. Kimbrough's Rule 3.850 motion, specifically that his counsel was ineffective for telling him the videotape was the only evidence to support his coercion claim and for failing to tell him she had filed a motion for suppression, and found that Mr.

Kimbrough did not demonstrate he was prejudiced by these actions (ex. I, p. 109). The court cited portions of the hearing and trial transcripts showing counsel filed a motion to suppress Mr. Kimbrough's admissions and also asserted a coercion defense at trial (ex. I, p. 109 and attach. 7-8).  The court concluded that Ms. Harris' possible miscommunication to him about defenses she ultimately raised at trial does not meet the *Strickland* standard for showing he was prejudiced just because he claims his counsel "was not functioning as reasonable counsel" (ex. I, p. 109).

The Rule 3.850 court then addressed Mr. Kimbrough's four claims of ineffective assistance of counsel in ground eight of his motion.  First, he alleged his counsel failed "to investigate the missing evidence being tampered with."  (Ex. I, p. 110).  Second, counsel failed to advise Mr. Kimbrough prior to trial that the videotape was partially inaudible (ex. I, p. 110).  The court addressed these claims together. It stated that Mr. Kimbrough did not offer, nor could he prove, the videotape was tampered with (ex. I, p. 110).  Furthermore, although he claimed he should have been immediately notified that the tape was inaudible, he does not show how he was prejudiced by delayed notification.  On those claims, the court found Mr. Kimbrough failed to demonstrate either deficient performance or prejudice under *Strickland* (ex. I, p. 110).

Next, the court addressed Mr. Kimbrough's assertion that the portions of the tape the state edited showed that the two officers coerced him into confessing and, if played at trial, would have allowed the jury to assess the voluntariness of his confession (ex. I, p. 110).  The Rule 3.850 court found that not only were these claims speculative, but the record refuted them (ex. I, p. 110).  It cited the portion of the trial transcript where the trial court approved the editing changes before the State played the videotape (ex. I, p. 110-111 and attach. 9).   The court also noted that Mr. Kimbrough's post-conviction motion does not allege that he told his counsel which statements or actions made up the inaudible portions of the videotape (ex. I, p. 111). As further support, it also cited the portion of the trial transcript where Mr.

Kimbrough and his counsel decided to allow the jury to hear a portion of the videotape the State planned to omit for his benefit: Mr. Kimbrough's explanation of "how he picked up other women." (Ex. I, p. 111 and attach. 10). Based on Mr. Kimbrough's failure to show he alerted his counsel to these possible problems and even agreed to play potentially incriminating portions of his statement for the jury, the Rule 3.850 court concluded he could not show his counsel's performance was deficient and he was not entitled to relief (ex. I, p. 111).

Closely related is Mr. Kimbrough's claim that one of the interrogating officer's trial testimony revealed "exculpatory evidence was withheld beneficial to the Defendant's defense." (Ex. I, p. 36). The Rule 3.850 court construed this claim as advancing a *Brady*[12] violation. Mr.Kimbrough alleged the state withheld exculpatory evidence. He did not explain how that evidence prejudiced him. Based on this analysis, the court concluded Mr. Kimbrough failed to meet the *Brady* test and was not entitled to relief (ex. I, p. 111).

Finally, the Rule 3.850 court addressed the last claim by referring to its review of Mr. Kimbrough's ground fifteen, where it analyzed the overlapping claim that his counsel was ineffective for failing to object to the trial court judge's decision not to rule on whether his confession was voluntary(*see* ex. I, p. 112, 117). The court cited the portion of the record showing counsel made a motion to suppress, which the trial court judge denied (ex. I, p. 117). It also cited the trial judge's jury instruction at the close of the trial: "If you conclude the defendant's out-of-court statement was not freely and voluntarily made, you should disregard it." (Ex. I, p. 117; ex. C, 196-97). The Rule 3.850 court cited two Florida cases in holding:

> A judge may make a preliminary ruling on the voluntariness of an admission and then instruct the jury on the voluntariness issue. It is not required that the judge actually use the term "voluntary" when deciding that statements are admissible.

---

[12] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 251 (1963).

(Ex. I, p. 117) (citing *Houck v. Florida*, 421 So.2d 1113, 1116 (Fla. Dist. Ct. App. 1982) and *Antone v. Florida*, 382 So.2d 1205, 1213 (Fla. 1980)). Applying the record evidence to Florida precedent, the Rule 3.850 court determined Mr. Kimbrough's claims were without merit (ex. I, p. 117).

### Federal Review of State Court Decision

The Rule 3.850 court had the task of parsing out petitioner's core claims of ineffective assistance of counsel from his secondary claims alleging violations of various other constitutional rights. Some of the ineffective assistance claims were apparently attempts to re-raise claims that were denied on direct appeal. Nevertheless, the Rule 3.850 court addressed the claims on the merits as ineffective assistance of counsel claims, and this court defers to its interpretation.

It is not necessary to restate the *Strickland* standard, and the Rule 3.850 court continued to apply it correctly in assessing grounds six through eight of petitioner's 3.850 motion, which form ground five of the instant petition for writ of habeas corpus. Ground five of the petition raised eight claims, listed *supra*, of ineffective assistance of counsel, and the Rule 3.850 court considered each claim on the merits but one.

The Rule 3.850 court addressed claim one by referring to the trial court's decision in the first *Nelson* inquiry. The Rule 3.850 court agreed with the trial court's credibility determination, finding the testimony of Ms. Harris more credible than that of Mr. Kimbrough (ex. B, pp. 121-124). It found that Ms. Harris' testimony showed she was rendering effective assistance to Mr. Kimbrough. *See Nelson*, 274 So.2d at 259 (if defendant requests to discharge counsel because she is incompetent, court must determine whether counsel is rendering effective assistance). This court must give deference to the state court's determinations regarding credibility. *Baldwin v. Johnson*, 152 F.3d 1304, 1317 (11th Cir. 1998).

Additionally, Mr. Kimbrough has not shown by clear and convincing evidence that the determination was unreasonable. *See* 28 U.S.C. § 2254(d)(2); § 2254(e)(1);

*Callahan v. Campbell*, 427 F.3d 897, 926 (11th Cir. 2005) ("Not only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence."); *see also Rutherford v. Crosby*, 385 F.3d 1300, 1308 (11th Cir. 2004) (the factual finding must be unreasonable in light of the evidence in the state court record).  Counsel has a duty to make reasonable investigations, or make a reasonable conclusion that investigation is unnecessary.  *Blankenship v. Hall*, 542 F.3d 1253, 1273 (11th Cir. 2008) (citing *Strickland*, 466 U.S. at 690-91, 104 S. Ct. at 2066).  In evaluating counsel's reasonableness, "a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further."  *Alderman v. Terry*, 468 F.3d 775, 792 (11th Cir. 2006) (quoting *Wiggins v. Smith*, 539 U.S. 510, 527, 123 S. Ct. 2527, 2538, 156 L. Ed. 2d 471 (2003)).  Ms. Harris testified that she had not found the missing videotapes but thought she knew where by might be (ex. B, p. 122).  She also testified she filed a motion to suppress, requested a suppression hearing, and completed discovery (ex. B, p. 123).  In short, she said she was ready for trial (*id.*).  The court's factual finding that Ms. Harris was not deficient in her performance and that Mr. Kimbrough could not show he was prejudiced by her actions is reasonable based on the record before it.  Counsel's testimony shows she was investigating the whereabouts of the tapes.

For the same reason, this court also defers to the Rule 3.850 court's finding that the second *Nelson* inquiry showed Ms. Harris counsel was not ineffective for failing to file a motion for dismissal, which is ground five, claim two, in the instant petition.  (*See* ex. B, pp. 127-129; ex. I, p. 34).

Ground five, claim three, contends counsel "misled" Mr. Kimbrough regarding the strength of a psychological coercion defense (ex. I, p. 31).  The Rule 3.850 court cited the trial transcript in finding that Ms. Harris in fact raised a coercion defense at trial (ex. I, p. 109).  Because counsel raised the defense, the court concluded Mr.

Kimbrough could not show he was prejudiced by Ms. Harris's earlier statement (ex. I, p. 109). "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 131 S. Ct. at 791. Ms. Harris may have told Mr. Kimbrough that if the videotapes were not found there would be no evidence of coercion. However, this miscalculation does not make counsel incompetent or ineffective, and as the record supports, Ms. Harris raised the argument at the suppression hearing and successfully requested that Mr. Kimbrough testify about the videotaped interviews (ex. C, pp. 72-82). The record supports the Rule 3.850 court's conclusion that counsel was not ineffective for "misleading" Mr. Kimbrough.

Claim four asserts that Mr. Kimbrough's counsel was ineffective for failing to raise several issues about the missing videotapes. The Rule 3.850 decision found that the *Nelson* inquiry showed that Ms. Harris was rendering effective assistance, and Mr. Kimbrough did not show that her conduct fell below an objectively reasonable standard of representation under *Strickland* (ex. I, p. 109). The record supports the Rule 3.850 court's decision. The first hearing was triggered by counsel's request to the trial court judge to allow Mr. Kimbrough to speak (ex. B, p. 121). He asked the court to inquire about the missing videotapes, and the court asked Ms. Harris to respond to his statements (ex. B, p. 121-122). Both the trial court and the Rule 3.850 court determined that Ms. Harris' response was satisfactory (ex. I, p. 109, ex. B, p. 123). Moreover, that Ms. Harris even asked the court to allow Mr. Kimbrough to voice his concerns negates his argument that she "refused" to raise the issue. Counsel made strategic decisions regarding the videotape, including whether to raise Mr. Kimbrough's issues with the trial court. The Supreme Court instructs courts to refrain from questioning counsel's trial strategy in most situations:

> Although courts may not indulge "post hoc rationalization" for
> counsel's decisionmaking that contradicts the available evidence of

> counsel's actions, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect."

*Harrington*, 131 S. Ct. at 790 (internal citations omitted). Mr. Kimbrough did not show that Ms. Harris' failure to inquire about certain issues fell below acceptable standards for attorney conduct, and the Rule 3.850 court's decision to deny relief for this claim is not unreasonable.

Ground five, claim five, alleges counsel was ineffective because she did not view the videotapes prior to filing a motion to suppress (ex. I, pp. 32-33). In support, Mr. Kimbrough cites a portion of the first *Nelson* inquiry (ex. I, p. 32), presumably because counsel states in separate instances that she filed a motion for suppression and that the investigator had yet to locate the missing videotapes (ex. B, p. 122). The Rule 3.850 court found this claim to be meritless based on testimony from the two *Nelson* hearings (ex. I, p. 109). The Rule 3.850 court does not provide additional explanation for its conclusion, but this does not affect this court's review because its focus is not on the Rule 3.850 court's method of reasoning. *Gill*, 633 F.3d at 1291 This court determines whether the trial court's fact finding was reasonable "only to the extent that the state court's ultimate conclusion relied on it." *Id.* The state court concluded Mr. Kimbrough did not show his counsel was ineffective for failing to view the videotapes prior to filing the motion to suppress. It relied on the trial court's *Nelson* inquiry. The undersigned concludes that, based on the record testimony, the trial court's factual finding that Ms. Harris was not ineffective was not unreasonable, and the Rule 3.850 court's reliance upon that finding is not unreasonable. Mr. Kimbrough has failed to show ineffectiveness or prejudice by clear and convincing evidence.

The undersigned has thoroughly reviewed the Rule 3.850 court's decision and cannot locate a discussion of claim six, which is counsel's failure to specify the contents of the officers' coercive statements in the motion to suppress or suppression hearing. Although the undersigned believes this was unintentionally

overlooked and recognizes the overlapping nature of the claims, to be thorough, this court will conduct a de novo review on the merits of claim six.  To successfully allege a claim of ineffective assistance of counsel, Mr. Kimbrough must show that his counsel's representation was objectively unreasonable and, but for counsel's unprofessional errors, there is a reasonable probability the outcome of the proceeding would have been different.  *Strickland*, 466 U.S. at 677-678, 104 S. Ct. at 2064.  Ms. Harris filed a motion to suppress Mr. Kimbrough's admissions on May 18, 2005 (ex. B, p. 12).   The motion states that Mr. Kimbrough's admissions were obtained illegally for the following reasons:

> 1.   In Defendant's first interview, police threatened and coerced the Defendant by telling him he could be sentenced to 99 years in prison for Violation of Probation alone.
> 2.   This threat by police served to exerted [sic] an improper influence over the Defendant and deluded the Defendant as to his true position.
> 3.   The statements of police led the Defendant to believe that if he "confessed," he would obtain help and rehabilitation.

(Ex. B, p. 12).[13]  On the first day of trial, the court held a suppression hearing during a jury recess.  Ms. Harris stated:  "As you can see from the motion, I'm asking that that confession be suppressed because of improper influence on Mr. Kimbrough when the police threatened that he could get 99 years in prison on the VOP alone."  (Ex. C, p. 72).  She proceeded by eliciting testimony from petitioner detailing what the interrogating officers said and did, and what effect this had on Mr. Kimbrough's state of mind at the time he confessed (*id.* at 73-75).  At one point, Mr. Kimbrough testified that the only reason he confessed was because of the officers' statements: testimony:

> MS. HARRIS: Did you feel like the police were threatening you with the 99 years is the reason why you decided to make up this story?

_____

[13]  Ms. Harris also argued the admission should be suppressed because the police failed to give Mr. Kimbrough new Miranda warnings before interviewing him a second time, and after Mr. Kimbrough confessed they only "reminded" him of his rights (ex. B, p. 12; ex. C, p. 73).

**THE DEFENDANT: If it wasn't for what, if it wasn't for him telling me I'm going to get 99 years, I wouldn't have said a damn thing, excuse my French.  But I wouldn't have.  I wouldn't have said one damn thing, I'm sorry.  I wouldn't have.  And he didn't do it once, he did it three times and Tama Barber agreed with him.**

(Ex. C, p. 76).[14]

Applying the *Strickland* standard in light of the record testimony, Ms. Harris' advocacy for suppression was well within the wide range of reasonable professional assistance.  *See Chandler*, 218 F.3d at 1314.  Ms. Harris raised the coercion issue and elicited key testimony from Mr. Kimbrough to support suppression.  Based on these facts, Mr. Kimbrough cannot show his counsel acted unreasonably, and he is not entitled to relief on this claim.

Mr. Kimbrough alleges in ground five, claim seven, that his counsel did not inform him prior to trial that portions of the videotape were inaudible.  He claims the portions that were inaudible are the portions that show his confession was involuntary (ex. I, p. 36).  The Rule 3.850 court applied the prejudice prong of the *Strickland* test in concluding that even if Mr. Kimbrough did not learn until trial that the videotape was partially inaudible, he did not show how this fact prejudiced him (*id.* at 110).  Prejudice exists only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  The Rule 3.850 court applied this test and concluded that Mr. Kimbrough could not show the result would have been different if petitioner was "*immediately* aware that the tape was inaudible."  (Ex. I, p. 110) (emphasis in original).  The undersigned agrees.  Mr. Kimbrough's contention is that the confession was coerced and thus involuntary, but being aware of the integrity of the videotape would not have changed the result of the trial.  As discussed in

---

[14]  Mr. Kimbrough may have stated on one of the videotapes that he was afraid of getting "fried," and Ms. Harris argued that he said this because the officers' interrogations made him believe he could receive the death penalty for his alleged actions.  Although neither attorney had noted where on the videotape he said "fried" and did not remember hearing it, the trial court judge allowed Ms. Harris to argue this theory to the jury in her closing.  (Ex. C,156-161).

regard to other claims, the trial court judge reviewed the tape and approved the edits.  He denied the motion to suppress the confession.  He instructed the jury regarding its ability to determine whether Mr. Kimbrough's confession was voluntary.   The Rule 3.850 court cited these facts in rejecting each of Mr. Kimbrough's claims about the videotape and his confession (ex I, p. 117).  Rule 3.850 court's decision was based on a reasonable interpretation of the facts in light of the record, and Mr. Kimbrough did not demonstrate how he was prejudiced by Ms. Harris' failure to alert him to the integrity of the videotapes prior to trial.

Mr. Kimbrough's final claim is that his counsel failed to investigate prosecutorial misconduct (i.e. State's editing and integrity of videotapes), and his counsel was ineffective because the government tampered with the videotape, or alternatively, withheld exculpatory evidence.  This claim comprises at most three sentences of grounds six through eight of Mr. Kimbrough's post-conviction motion. The most logical reading of Mr. Kimbrough's argument is that the videotape was edited, the portions the State removed were exculpatory, the State committed a *Brady* violation, and Ms. Harris should have investigated the violation and requested a hearing.  The Rule 3.850 court cited the trial court judge's approval of the edits, and concluded that Mr. Kimbrough could not show the outcome of the trial would have been different if the court played the entire tape for the jury (ex. I, p. 110-111). It also analyzed whether Mr. Kimbrough sufficiently alleged a *Brady* violation (*id.*). The Supreme Court held in *Brady* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."   373 U.S. at 87, 83 S. Ct. at 1196-97.   The undisclosed evidence is only material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct.

3375, 3383, 87 L. Ed. 2d 481 (1985).  The Rule 3.850 court concluded that if the State did withhold evidence, Mr. Kimbrough did not demonstrate he was prejudiced by the withholding (ex. I, p.110-111).

The court did not use Supreme Court terminology, but in finding that Mr. Kimbrough was not prejudiced, it found the evidence withheld was not material.  It summarily denied all of Mr. Kimbrough's claims relating to the videotape, tampering, and misconduct (*id.* at 109-111).   It did not explicitly state it was denying Mr. Kimbrough's ineffective assistance of counsel claim based on the underlying allegations of misconduct, although it found the underlying allegations meritless. The Supreme Court has stated that even when a state court's decision does not explain why it ruled as it did, the petitioner still must show the state court had no reasonable basis to deny relief.  *Harrington*, 131 S. Ct. at 784.  "This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of  one, has been adjudicated."  *Id.*  Mr. Kimbrough has not shown that the Rule 3.850 court had no reasonable basis to deny his ineffective assistance of counsel claim based on failure to investigate prosecutorial misconduct.  Where a petitioner is not entitled to relief for prosecutorial misconduct, his attorney's failure to object to that misconduct does not warrant reversal.  *Land v. Allen*, 573 F.3d 1211, 1221 (11th Cir. 2009)  This court defers to the Rule 3.850 court's decision; based on the record, Mr. Kimbrough cannot show he was prejudiced by his counsel's inaction.

The state court's ruling on the multiple parts of Mr. Kimbrough's ground five did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," and it was not based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Kimbrough is not entitled to federal habeas relief, and the writ should not issue.

## CONCLUSION

The court has carefully reviewed the entire trial transcript, the records of proceedings on Mr. Kimbrough's motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850, and all submissions in this proceeding.  Mr. Kimbrough's ground one, alleging the trial court erred in denying the motion to suppress, was not presented as a federal claim.  Ground two, alleging the trial court erred in the *Nelson* hearings, is solely a matter of state law.  Grounds three, four, and five including sub-parts, do not warrant federal habeas relief, and the writ should not issue.

## CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(a), Rules Governing Section 2254 Cases.  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case has made no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is recommended that the court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the amended petition for writ of habeas corpus (doc. 7), challenging the convictions and sentences in *State of Florida v. Terrence Kimbrough*, in the Circuit Court of Escambia County, Florida, case no. 2004-4775, be DENIED and the clerk be directed to close the file..

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida, this 20th day of May, 2011.

/s/ *Miles Davis*

MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties</u>.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**